SAMUEL BAYER, PHILIP BAYER, HENRY BAYER and ALEXANDER BAYER, Plaintiffs, *v.* NATHAN BAYER, Defendant.

Supreme Court, New York Special Term, December, 1923.

Partnership — absolute good faith between partners essential — control by partnership of the majority stock in a corporation — dissolution of partnership — purchase by former partner, pending carrying out of dissolution agreement, of stock in the corporation without the knowledge of his former copartners in order to obtain control of the corporation — former partner cannot accept a pro rata share of partnership assets and retain stock in the corporation purchased by him — former partner declared to hold the shares of stock of the corporation purchased by him as trustee — pleading — when other stockholders in the corporation not necessary parties — Civil Practice Act, § 193 — equity.

The rule that a partner owes a duty of absolute good faith to his copartner and may not act individually for himself in a manner affecting their common interests is not merely a technical rule of partnership but is based upon sound common sense and the ordinary rules of fair dealing.

Prior to June, 1919, plaintiffs and the defendant, members of one family, were partners in a successful business, the principal part of which was the purchase of certain cotton goods " in the grey " and having them finished into dress goods for resale. A large proportion of the goods was so finished by a corporation formed by plaintiffs, the defendant and B. and H., who were active officers in the corporation, the capital stock of which was $24,000, of which one hundred and sixty shares were owned by the parties to this action and forty shares each by the other incorporators. After a bitter quarrel in June, 1919, between plaintiffs and the defendant it was expressly or impliedly agreed that the partnership should terminate, upon the understanding from the start that after the dissolution the plaintiffs would continue to do business together, probably under the old firm name, and that the defendant would be excluded from the new firm. After many conferences the parties in October following entered into agreements which together provided all the terms for immediate dissolution of the partnership and since that time the plaintiffs in accordance with said agreements have carried on the business under the old firm name. It was agreed that the stock of the corporation should be divided among the parties in proportion to their interest in the partnership, viz., seventy-one per cent and twenty-nine per cent, so that the plaintiffs received one hundred and thirteen shares of the stock and defendant forty-seven shares. An indebtedness of the corporation to the partnership incurred prior to June, 1919, was divided in the same proportion, it being further agreed that for seven years plaintiffs were to be entitled to two-thirds and the defendant to one-third of the production of the mill of the corporation and that at the expiration of said seven years the agreement was to be renewed for a like period. Between the date of the quarrel and when the formal dissolution agreements were made the defendant bought from B. and H. seventy-six shares of the stock, which together with the forty-seven shares received upon the dissolution of the partnership made him the majority stockholder. The fact of such purchase was not disclosed to plaintiffs who entered into the dissolution agreement without

knowledge of such purchase, and upon learning of it this action was brought to obtain a decree that defendant be declared a trustee for the partnership of the stock purchased by him from B. and H. *Held*, that in the absence of circumstances tending to show plaintiffs' consent, express or implied, to the purchase by defendant of such stock, or which might exempt him from the ordinary duty of one partner to disclose to his copartners any matter concerning the partnership and which would preclude him from acting for himself individually without the consent of his copartners in any matter within the scope of the partnership or materially affecting it, equity in the light of the undisputed facts will regard the defendant as merely a trustee for the partnership of said stock and will compel him to do what he should have done before the dissolution, viz., to give plaintiffs the opportunity to share in the advantage obtained by the ownership of this additional stock.

While technically the partnership was not dissolved at the time of the quarrel but continued until the formal agreement of dissolution, neither the plaintiffs' right nor the defendant's duty would be affected by a decision of the technical point.

Whatever may have been the apprehension of defendant that plaintiffs, none of whom made any attempt to purchase the B. and H. stock, would take advantage of him or the basis of such apprehension, he could not upon the dissolution of the partnership accept a *pro rata* share of one of the assets of the partnership and retain property which he had bought without the plaintiffs' knowledge and which rendered the partnership property as a whole more valuable and rendered the part which the plaintiffs received less valuable.

Agreements of plaintiffs with salesmen for a continuance of their services after the dissolution of the partnership, entered into before the dissolution contract was agreed upon, constituted in the circumstances disclosed neither a defense nor a counterclaim to the action.

While probably B. and H. would be proper parties to the action so that even their equitable claim to the stock could be adjudicated and proper provision made to protect any rights which they might have, they were not necessary parties under section 193 of the Civil Practice Act if the court can determine the controversy as between the parties actually before it "without prejudice to the rights of others or by saving their rights."

A decree declaring that the defendant holds legal title to the stock for the benefit of plaintiffs' cannot affect the rights of B. and H. to bring an action against the defendant to enforce any rights under their contract with the defendant; even a decree ordering the defendant to transfer to the plaintiffs seventy-one per cent of the stock acquired by him would not prejudice the right of B. and H., if such right does exist, to specifically enforce that contract so long as plaintiffs do not sell their stock to innocent third parties.

The decree to be entered herein shall declare that upon tender by the plaintiffs of a proportionate amount of the purchase price, the defendant shall hold seventy-six shares of the stock of the corporation as trustee for plaintiffs and himself and shall transfer the certificate of stock to himself as such trustee; that he shall not vote upon such stock at any meeting of the corporation without the consent of the plaintiffs or their successors in interest or by order of the court, and that after the termination of the second seven-year period he shall transfer to plaintiffs or their successors in interest seventy-one per cent of such stock.

ACTION to obtain decree declaring defendant a trustee for a partnership of stock of a corporation which he purchased.

*Guggenheimer, Untermyer & Marshall (Louis Marshall* and *James Marshall,* of counsel), for plaintiffs.

*Podell, Ansorge & Podell (David L. Podell, I. Maurice Wormser* and *Susan Brandeis,* of counsel), for defendant.

LEHMAN, J. The plaintiffs and the defendant are members of one family and prior to June, 1919, they were partners in a successful business in the city of New York. The principal part of their business seems to have been the purchase of cotton goods " in the grey " and then having these goods finished or " converted " into dress goods for resale. They employed a number of mills or factories for this work but a very large proportion of the goods was converted by the Montville Finishing Company, a corpora io formed by themselves together with one William R. Booth and John J. Healion who were active officers in the corporation. This company had $24,000 capital stock of which one hundred and sixty shares were owned by the parties hereto and forty shares each by Booth and Healion. The parties hereto had prior to June, 1919, also advanced to the corporation the sum of about $205,000, for which the corporation was still indebted to them. In June, 1919, the parties hereto had a bitter quarrel and it was agreed expressly or impliedly that their copartnership must be promptly terminated and it was apparently understood from the start that after the dissolution of the partnership the plaintiffs would continue to do business together probably under the old firm name and that the defendant would be excluded from the new copartnership. Undoubtedly from the time of the quarrel the copartnership was carried on with a view of facilitating the dissolution and for months no new cotton goods were bought in the grey to be converted into dress goods. During the summer and early autumn there were many conferences held to determine the exact basis for a dissolution and on October twenty-fifth and twenty-seventh the parties entered into agreements which together provide all the terms for an immediate dissolution of the copartnership and after that date the plaintiffs in accordance with the terms of these agreements have carried on the business under the old firm name. One of the points that was discussed at length during the negotiations leading up to the making of the formal agreements was the disposition of the shares of stock of the Montville Finishing Corporation and it was agreed that this stock should be divided among the parties in the proportion of their interest in the copartnership, viz., seventy-one per cent and twenty-nine per cent, so that the plaintiffs received one hundred and thirteen shares of stock and the defendant forty-seven shares. The indebtedness of the corporation to the copartnership was

divided in the same proportion and it was further agreed that for seven years the plaintiffs were to be entitled to two-thirds and the defendant to one-third of the production of the mill of the company and after the expiration of the seven years the agreement was to be renewed for a like period, upon the same terms and conditions except that the share of the production of the mill to which the plaintiffs and the defendant respectively were to be entitled was to be of the same proportion to the entire production of the mill " as the number of shares of the common stock of said corporation owned by " the plaintiffs and the defendant respectively is to the entire amount of common stock held by both. Between the date of the quarrel and the date when these formal agreements were made, the defendant had bought from Booth and Healion seventy-six shares of stock so that together with the forty-seven shares received upon the dissolution of the copartnership the defendant owned a clear majority of the stock. He did not disclose this purchase to the others who entered into the agreement referred to above without knowledge of that purchase. As soon as they learned of it they brought this action to obtain a decree to declare the defendant a trustee for the copartnership of the stock he purchased from Healion and Booth and to compel the defendant to transfer to the plaintiff seventy-one per cent thereof upon payment to him of a proportional share of the purchase price.

These facts are substantially undisputed and in the absence of other circumstances which might show a consent express or implied by the plaintiffs to the purchase made by the defendant or which might exempt the defendant from the ordinary duty of one copartner to disclose to his copartner any matter which concerns the partnership and which precludes one partner from acting for himself individually without the consent of his copartners in any matter within the scope of the copartnership or materially affecting it, these facts lead in my opinion necessarily to the conclusion that equity should regard the defendant as merely a trustee even though against his will for the copartnership. The rule that a partner owes a duty of absolute good faith to his copartners and may not act individually for himself in a manner affecting their common interest is not merely a technical rule of partnership but is based upon sound common sense and the ordinary rules of fair dealing. I am of the opinion that technically the copartnership was not dissolved at the time of the quarrel but continued in existence until the formal agreement of dissolution but I cannot see that the plaintiffs' rights or the defendant's duty would be affected by a decision of this technical point. The interest of the parties in the Montville Finishing Corporation was

still owned in common; all the parties regarded that interest not merely as an investment but as an important item of copartnership property useful in the carrying on of the business and the question of the disposition of this interest was one of the points of difference between the parties which was settled only by the formal agreement of dissolution. There can be no doubt that it was a matter of very material importance whether after the dissolution the defendant would be in control of the capital stock of the corporation, and even if I should hold that the defendant would have had a right to obtain the additional shares of stock after the dissolution, yet unless the plaintiffs had by their own acts justified the defendant in obtaining a secret advantage in advance, they were entitled in common fairness to know when they made the contract of dissolution that the defendant had already obtained additional stock sufficient with the stock then delivered to him to give him a majority control of the corporation. The defendant before the dissolution agreement was made had obtained stock which materially affected the value to the plaintiffs of the shares which they agreed to accept upon the dissolution. He obtained that stock because he was a member of the copartnership and to increase the value of his minority interest and in the absence of other circumstances equity must compel him to do what he should have done before the dissolution, viz., to give his copartners the opportunity to share in the advantage obtained by the ownership of this additional stock.

The defendant urges that he did not purchase the stock to obtain an advantage over his copartners but merely to protect himself against a justified apprehension that they would take advantage of him. I am unwilling to hold that the defendant has been guilty of any intention of bad faith for he impressed me as an honest man. Family partnership quarrels may engender bitterness which blind men to what they would otherwise recognize as fair dealing but whatever may have been the apprehensions of the defendant or the basis for such apprehension, he could not accept on dissolution a *pro rata* share of one of the assets of the partnership and retain property which he had bought without the plaintiffs' knowledge and which rendered the partnership property as a whole more valuable and rendered the part which the plaintiffs received less valuable.

So far I have considered only the question as if the undisputed facts stood alone, but the defendant asserts and the plaintiffs deny that prior to the purchase of the additional shares of stock by the defendant, the plaintiffs had refused to place all the stock owned by the copartnership into a voting trust so that the defendant's

minority interest might be protected and that they had told the
defendant that he should buy the outstanding stock if he could get
it and the defendant further claims that the plaintiffs themselves
tried secretly to purchase this stock from Booth and Healion
shortly after he made his purchase. It is not easy to determine
where the truth lies when men of reputation and apparent honesty
testify to entirely contradictory facts and the difficulty is immeasur-
ably increased in a case like this where family dissension and
bitterness has warped the views of both sides. I have reluctantly
come to the conclusion that the version of neither side can be
accepted in whole and I have determined that the probability is
there was a discussion in regard to placing the copartnership stock
in a voting trust, August thirteenth, when the defendant purchased
the additional stock. The defendant's suggestion for such a voting
trust was declined but I cannot believe that any of the plaintiffs
told the defendant in words or effect that he was free to purchase
the outstanding stock. It may perhaps be conjectured that there
was some talk about the impossibility of buying that stock which
the defendant now believes included a suggestion to buy it if he
could but I cannot find that such a suggestion was actually made.
In view of all the circumstances I have also come to the conclusion
that none of the plaintiffs made any attempt to purchase Booth
and Healion's stock for themselves, and it follows from these
considerations that the defendant has not proved justification
or consent.

The defendant further urges that the plaintiffs made agreements
with salesmen before the dissolution contracts were agreed upon by
which they retained the services of such salesmen after dissolution.
While the plaintiffs deny the making of these contracts, the
defendant's contention is strongly supported by various circum-
stances and I am ready to find that such contracts were made. I
do not think, however, that the making of such contracts in
behalf of the plaintiffs constitutes either a defense or counterclaim
to the action. The contracts were personal in their nature. They
were to take effect only on the dissolution and even if they had
been disclosed to the defendant they could not by their very nature
have become partnership assets upon the dissolution. It was
understood from the date of the quarrel that these plaintiffs would
continue to do business after dissolution and I can find no bad
faith in preparations made before hand to continue the business.
The salesmen were informed of the impending dissolution and they
were free to make contracts of employment with any of the
parties and no contract so made could inure to the benefit of the
other parties. These circumstances differentiate this case from

all other cases which I have been able to find where a contract made by one person during the continuance of the copartnership was held to be in equity a partnership asset. Moreover in the present case all negotiations were upon the basis that the plaintiffs should acquire the good will of the business and the formal agreements so provide, and certainly if they were entitled to the good will of the business they had a right to maintain the value of that good will by providing in advance for the continuance of the business. The defendant's counterclaims must, therefore, be dismissed.

The most serious doubt which I have had in this case is whether or not Booth and Healion still have such an interest in the stock purchased by the defendant as to make them necessary parties to the action. It appears that at the time the stock was purchased the defendant agreed not to dispose of the stock until he had first offered it back to Booth and Healion at the same price he paid for it. Healion and Booth knew at the time they sold the stock to the defendant that the defendant was a partner of the plaintiffs and that a dissolution was imminent and they further knew that the plaintiffs were not to be informed of the purchase of stock from them. If the defendant is chargeable with bad faith in law, Healion and Booth are chargeable with entering into an agreement to do something which the law regards as wrong. By their contract of sale they divested themselves of legal title to the stock. From that time on their only right depended upon their contract with the defendant and could be enforced only by a suit for specific performance. If Healion and Booth were parties to the present action the only issue as to them would be whether or not equity would enforce the contract. If it did enforce the contract the court would be compelled to render a decree which would produce the anomalous result that though the court has decided that the defendant holds title to the stock in trust for the partnership and Healion and Booth when they sold the stock knew that the defendant could not rightfully hold the stock for his individual benefit, yet that the court cannot enforce this trust until the stock has been offered back to Healion and Booth who could then resell to the defendant and thereby place the defendant in exactly the same position as if the decree had been in his favor. Equity is never powerless to right a wrong where the parties actually before it have legal title to the subject-matter and no innocent party is making any claim to the property involved. Booth and Healion would probably be proper parties to the action so that even their equitable claim to the stock could be adjudicated and proper provision made to protect any rights which they may have but they are not necessary parties under section 193 of the Civil Practice

Act if the court can determine the controversy as between the parties actually before it " without prejudice to the right of others or by saving their rights." No decree declaring that the defendant holds legal title to the stock for the benefit of his copartners can affect Booth and Healion's rights to bring an action against the defendant to enforce any rights they may have under their contract with the defendant and even a decree ordering the defendant to transfer to the plaintiffs seventy-one per cent of the stock acquired by him would not prejudice the right of Booth and Healion if such right does exist to specifically enforce that contract so long as the plaintiffs do not sell their stock to innocent third parties. Ordinarily in a case of this kind the court would order a transfer of a portion of the stock to the plaintiff individually since the copartnership is now at an end but in my opinion the court should not make such an order in the present case. If that stock is transferred to the plaintiffs they will be the owners of two-thirds of the entire capital stock and I have little doubt that when the dissolution agreement was discussed and made the parties contemplated that at least for fourteen years during which it was agreed no party should sell the stock in the corporation, neither party should also obtain a two-third majority thereof. The very fact that the parties agreed not to sell their stock during this period differentiates this case from other cases cited to me and in my opinion justifies a decree which would adequately protect the rights of all the parties; that will prevent the plaintiffs from obtaining a two-thirds majority of the capital stock of the corporation and that will at the same time save any rights however vague which Booth and Healion have. For that reason I shall make a decree declaring that upon tender by the plaintiffs of a proportionate amount of the purchase price, the defendant shall hold seventy-six shares of stock of the Montville Finishing Company as trustee for the plaintiffs and himself and shall transfer the certificate of stock to himself as such trustee; that he shall not vote such stock at any meeting of the corporation without the consent of the plaintiffs or their successors in interest or by order of the court, and that after October 27, 1933, he shall transfer to the plaintiffs or their successors in interest seventy-one per cent of such stock. Either party may have leave to apply at the foot of the decree for further and other relief. Judgment accordingly, with costs to the plaintiffs. Findings passed upon. Submit decision and decree on or before December seventeenth.

Judgment accordingly.